UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

CLIFTON BRYANT, JR.                                                                                   PLAINTIFF

V.                                                             CIVIL ACTION NO. 3:24-CV-9-KHJ-MTP

BLUE CROSS BLUE SHIELD – FEDERAL                                              DEFENDANT

ORDER

Before the Court is Defendant Blue Cross Blue Shield Association's ("BCBSA") [8] Motion to Dismiss.[1] The Court grants the motion.

I.   Background

Plaintiff Clifton Bryant Jr. is a federal employee and participant in a federal health insurance plan administered by BCBSA. *Id.* ¶¶ 1–2, 6–7; Bryant's Resp. [10] at 7. This case arises from BCBSA's denial of coverage for an experimental drug. *See* [1] at 1; *id.* ¶ 12.

In May 2023, Bryant went to a podiatrist to treat a diabetic ulcer on his big toe. *Id.* at 1; *id.* ¶ 3. The podiatrist treated him, prescribed an antibiotic, gave instructions on caring for the wound, and scheduled a follow-up visit for June 6. *See id.* ¶ 4. Sometime between the initial and follow-up visits, the infection spread to Bryant's "long right toe." *Id.* ¶ 5. At the follow-up visit, the podiatrist prescribed Bryant an "ointment called Regranex," which Walgreens was to fill and mail to him. *Id.* ¶ 6; [10] at 4. The ointment had not arrived by June 16, so Bryant contacted

---

[1] Bryant misnames BCBSA as "Blue Cross Blue Shield (BCBS) – Federal" in his Complaint. *See* [1].

Walgreens, who told him that BCBSA denied coverage for the Regranex. *Id.* ¶ 6. BCBSA sent Bryant a letter dated June 16, explaining that it denied coverage for the Regranex because it was "experimental or investigational." *Id.* ¶ 12; [8-1] at 393.

The infection worsened, leading to Bryant's admission to the emergency room on June 20. *See* [1] ¶¶ 8–10. Bryant's infected "long toe" on his right foot was amputated to prevent further damage. *Id.* ¶¶ 10–11.[2] Since then, Bryant has had to shift weight to his left leg, resulting in problems with his left foot. *Id.* ¶ 17.

Bryant sued BCBSA, contending that none of this would have happened had BCBSA approved the Regranex. *See id.* at 1. He specifically alleges that Regranex was not an experimental drug, so BCBSA should have covered it; he alleges BCBSA would have known that had it updated its drug database. *Id.* at 1, 4; *id.* ¶¶ 13, 15. He further asserts that BCBSA failed to recommend another form of treatment. *Id.* at 4; *id.* ¶ 7. Bryant seeks $40 million in damages for BCBSA's alleged "negligence" and coverage denial. *Id.* at 4.

BCBSA moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [8]. The Court finds that it has subject-matter jurisdiction, and that Bryant does not state a claim.

II.     Standard

Rule 12(b)(1) motions challenge the district court's subject matter jurisdiction, with the burden of proof on the party asserting jurisdiction. *Hartford Ins. Grp. v. Lou–Con Inc.*, 293 F.3d 908, 910 (5th Cir. 2002); Fed. R. Civ. P. 12(b)(1).

---

[2] By "long toe," Bryant means the "second digit on [his] right foot." *Id.* ¶ 10.

2

In evaluating such motions, the Court may consider "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001) (citing *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Krim v. PcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005) (citations omitted).

When reviewing a motion under Rule 12(b)(6), the Court must first "tak[e] note of the elements a plaintiff must plead to state [the] claim" to relief, and then decide whether the plaintiff has pleaded those elements with adequate factual support to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiffs." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quotation omitted). The Court can consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) (cleaned up).

III.   Analysis

The Court begins by sketching the statutory and regulatory scheme governing the relationship between the parties.

In 1959, Congress enacted the Federal Employees Health Benefits Act (FEHBA) to create "a comprehensive program of health insurance for federal employees." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 682 (2006); *see also* 5 U.S.C. §§ 8901–14. FEHBA authorizes the U.S. Office of Personnel Management ("OPM") to contract with insurance "carriers" and promulgate regulations to carry out the program. *Empire*, 547 U.S. at 682; 5 U.S.C. §§ 8901(7), 8902–03, 8913.

OPM contracted with Defendant BCBSA for the nationwide Service Benefit Plan (the "Plan"). *See* 5 U.S.C. § 8903(1); [8-1] at 71–72 ("The Carrier is [BCBSA]."). Local Blue Cross and Blue Shield companies administer the Plan in their respective localities. *See* [8-1] at 71–72; *Health Care Serv. Corp. v. Methodist Hosps. of Dall.*, 814 F.3d 242, 247 (5th Cir. 2016). Bryant, a federal employee, is insured under the Plan. *See* [1] ¶¶ 1–2. Accordingly, the federal government pays most of Bryant's premium costs, and he pays the rest. *See* 5 U.S.C. § 8906(b); *Empire*, 547 U.S. at 684. All premium payments under the Plan are deposited into a special letter of credit account in the Employees Health Benefits Fund (the "Fund") within the U.S. Treasury. 5 U.S.C. § 8909(a). BCBSA and other "experience-rated" carriers draw from the Fund as necessary to pay for benefit claims and administrative expenses. *See* 48 C.F.R. §§ 1632.170(b), 1652.216-71(b). The government pays a negotiated fee

4

for BCBSA's services, *see id.* § 1615.404-4; the Plan is a "fee-for-service health plan." *Empire*, 547 U.S. at 684. As such, any excess premiums remain government property, and BCBSA profits from a negotiated service fee. *See Hous. Cmty. Hosp. v. Blue Cross & Blue Shield of Tex., Inc.*, 481 F.3d 265, 267 n.2 (5th Cir. 2007). Under this structure, BCBSA "never takes on the risks of an insurer in its relationship with OPM. It operates instead as a claims processor, rather than an insurer." *Gonzalez v. Blue Cross Blue Shield Ass'n*, 62 F.4th 891, 896 (5th Cir. 2023) (quotation omitted).

Therefore, when disputes arise, it is the government's money at stake. That is why "OPM has the first and last word on the health benefits that an employee may receive under the Plan." *Id.* OPM has the first word in that it determines the benefit structure of each plan and promulgates the plan's terms in a Statement of Benefits that it provides to enrollees. *See* 5 U.S.C. §§ 8902(d), 8907; *see also* [8-1] at 223–391 (2023 Statement of Benefits). It has the last word in that each contract it enters requires the carrier "to pay for or provide a health service" if OPM "finds that the employee . . . is entitled thereto under the terms of the contract." 5 U.S.C. § 8902(j); *see also Gonzalez*, 62 F.4th at 896 (citing 5 U.S.C. § 8902(j)) ("[BCBSA] must honor any case-by-case determinations that OPM makes for an individual employee.").

To give that provision effect, OPM implemented a mandatory administrative remedy system. A dissatisfied enrollee must first request the carrier to reconsider its decision; if the carrier upholds the denial or fails to timely respond, the enrollee may obtain OPM review. 5 C.F.R. § 890.105. If OPM upholds the denial, the insured

may sue OPM. *Id.* § 890.107(c). Such an action "must be brought against OPM and not against the carrier or carrier's subcontractors." *Id.* And "[t]he recovery in such a suit shall be limited to a court order directing OPM to require the carrier to pay the amount of benefits in dispute." *Id.*

No suit may be brought "prior to exhaustion of the administrative remedies provided in § 890.105." *Id.* § 890.107(d)(1). That means an enrollee must "exhaust both the carrier and OPM review processes . . . before seeking judicial review of the denied claims." *Id.* § 890.105(a)(1). To avoid confusion, the "Plan documents describe all of these procedures." *Gonzalez*, 62 F.4th at 896; *see also* [8-1] at 364–66.

With that background, the Court turns to BCBSA's motion to dismiss. Liberally construing Bryant's Complaint, he asserts three claims: (1) a FEHBA claim seeking monetary damages for BCBSA's denial of Regranex; (2) medical malpractice under 51 U.S.C. § 20137; and (3) state law negligence. *See* [1] at 4; [1-1]; [10] at 8–11. The Court addresses BCBSA's jurisdictional attacks first. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

A. Sovereign Immunity

"[T]he United States may not be sued except to the extent that it has consented to suit by statute. Further, where the United States has not consented to suit or the plaintiff has not met the terms of the statute the court lacks jurisdiction and the action must be dismissed." *Gonzalez*, 62 F.4th at 898 (quotation omitted).

BCBSA argues that sovereign immunity extends to contractors in suits where the United States is the real party in interest and a judgment would be satisfied by

the U.S. Treasury. *See* BCBSA Supp. Mem. [9] at 11–14. BCBSA further maintains that Bryant's claims fall outside of FEHBA's waiver of sovereign immunity. *Id.* at 13–14 (first citing *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, No. 3:12-CV-1607, 2014 WL 360291, at *4 (N.D. Tex. Feb. 3, 2014); then citing *Mentis El Paso, LLP v. Health Care Serv. Corp.*, 58 F. Supp. 3d 745, 752–56 (W.D. Tex. 2014)); *see also* 5 U.S.C. § 8912.

The Fifth Circuit has not squarely addressed whether sovereign immunity extends to FEHBA carriers. *See Innova*, 2014 WL 360291, at *4 (citing *Hous. Cmty. Hosp. v. Blue Cross & Blue Shield of Tex., Inc.*, 481 F.3d 265, 280 (5th Cir. 2007) (declining to rule "on the merits of BCBST's assertion of sovereign immunity" as a FEHBA carrier)). District courts within this circuit and others have concluded that it does. *See id.* at *4–6 & n.3; *Mentis*, 58 F. Supp. 3d at 752–56; *Ctr. for Reconstructive Breast Surgery, LLC v. Blue Cross Blue Shield of La.*, No. 11-806, 2014 WL 4930443, at *4–5 (E.D. La. Sept. 30, 2014); *Vrijesh S. Tantuwaya MD, Inc. v. Anthem Blue Cross Life & Health Ins. Co.*, 169 F. Supp. 3d 1058, 1070–71 (S.D. Cal. 2016); *Calingo v. Meridian Res. Co.*, No. 7:11-CV-628, 2011 WL 3611319, at *12 (S.D.N.Y. Aug. 16, 2011).

But the Court gleans two lessons from the Fifth Circuit's recent opinion in *Gonzalez* that caution against dismissing Bryant's complaint based on sovereign immunity. Lesson one: Congress intended a "broad waiver" of sovereign immunity for claims founded on FEHBA—i.e., "suits to vindicate rights or enforce obligations

7

created by [FEHBA]." *See Gonzalez*, 62 F.4th at 899 (citing 5 U.S.C. § 8912).[3]

Lesson two: only Congress can narrow or retract this broad waiver; agencies cannot regulate sovereign immunity. *See id.* at 899–900. *Innova* and *Mentis*, two Texas district court cases relied on by BCBSA, *see* [9] at 13–14, violate lesson two. Each of these cases expressly relied on the regulatory scheme set out by OPM to conclude that Congress intended only a limited waiver of sovereign immunity in Section 8912. *See Innova*, 2014 WL 360291, at *7 (citing *Bryan v. Office of Personnel Mgmt.*, 165 F.3d 1315, 1318 (10th Cir. 1999)); *Mentis*, 58 F. Supp. 3d at 757. The Fifth Circuit expressly repudiated that approach in *Gonzalez*. *See* 62 F.4th at 899–900 (disagreeing with *Bryan*, 165 F.3d 1315).

Therefore, to the extent Bryant's Complaint seeks to vindicate rights or enforce obligations created by FEHBA, the Court declines to dismiss his Complaint under the doctrine of sovereign immunity. *Id.* (holding that sovereign immunity did not bar plaintiff's claim for monetary relief arising from the wrongful denial of a covered treatment). The Court thus turns to BCBSA's next jurisdictional attack—standing.

B. Standing

To have Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*,

---

[3] Under Section 8912, "[t]he district courts of the United States have original jurisdiction . . . of a civil action or claim against the United States founded on [5 U.S.C. §§ 8901–14, that is, FEHBA]." *Id.* at 898–99 (quoting 5 U.S.C. § 8912).

578 U.S. 330, 338 (2016). BCBSA challenges the causation element, arguing that Bryant's decision to forego other options for potentially obtaining Regranex renders his injury self-inflicted and thus defeats standing. [9] at 14–15.[4]

BCBSA is correct that "standing cannot be conferred by a self-inflicted injury." *Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018). But standing "is not defeated merely because the plaintiff has in some sense contributed to his own injury." *St. Pierre v. Dyer*, 208 F.3d 394, 402 (2d Cir. 2000) (quoting 13 Charles A. Wright et al., *Federal Practice and Procedure* § 3531.5 (2d ed. 1984)). Rather, standing is defeated only where the injury "is so completely due to the plaintiff's own fault as to break the causal chain." *Backer ex rel. Freedman v. Shah*, 788 F.3d 341, 344 (2d Cir. 2015) (quoting *St. Pierre*, 208 F.3d at 402). That is not the case here.

Bryant's podiatrist prescribed Regranex on June 6, 2023. [1] ¶¶ 5–6. "What should have been a two-day mail order prescription" turned into several days of uncertainty. *See id.* ¶¶ 6–7. Bryant realized on June 16 that BCBSA would not cover the Regranex. *Id.*; *see also* [8-1] at 393. Bryant responded reasonably by contacting his podiatrist and informing her of the denial. [1] ¶ 8. Unfortunately, the situation developed rapidly, and Bryant was admitted to the emergency room four days after learning of the coverage denial. *See id.* ¶¶ 8–10. He was under intensive care for six days until his toe was amputated. *See id.* ¶¶ 10–11. He alleges that

---

[4] BCBSA does not challenge the other two elements of standing. Bryant suffered an injury in fact; he lost his toe. And damages, even nominal damages, redress a past injury in a way that satisfies the "redressability" element of standing. *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 800–01 (2021).

Regranex is accepted as a treatment for diabetic foot ulcers and that had BCBSA updated its database, it would not have denied the drug as "experimental." *See id.* at 1, 4; *id.* ¶¶ 13, 15.

In short, Bryant alleges that if BCBSA had a correct database, he would have had Regranex within a day or two after it was prescribed, which would have prevented his toe from being amputated. The fact that he did not purchase the Regranex himself or that he did not pursue an expedited review after BCBSA denied the medication may have contributed to his injury. But so did BCBSA's coverage denial, which allegedly resulted from its failure to update its database. And "[s]o long as the defendant[] ha[s] engaged in conduct that may have contributed to causing the injury, it would be better to recognize standing . . . ." *St. Pierre*, 208 F.3d at 402 (quoting Wright et al., *supra*, § 3531.5); *see also Engwiller v. Pine Plains Cent. Sch. Dist.*, 110 F. Supp. 2d 236, 246–47 (S.D.N.Y. 2000) (concluding that plaintiff had standing even though she failed to pursue the administrative remedy designed to force a prompt decision). The Court finds Bryant has Article III standing to sue. But as explained below, Bryant fails to state a claim.

   C. Failure to State a Claim

      1. FEHBA Claim

To the extent Bryant's Complaint raises claims "founded on" FEHBA, 5 U.S.C. § 8912, he fails to state a claim upon which relief can be granted. Congress granted OPM statutory authority to "prescribe regulations necessary to carry out

[FEHBA]." *Gonzalez*, 62 F.4th at 901 (quoting 5 U.S.C. § 8913). That regulatory scheme precludes Bryant's FEHBA claim in three ways.

First, suits challenging the denial of FEHBA benefits cannot be brought against FEHBA carriers; they must be brought against OPM. 5 C.F.R. § 890.107(c); *see also Empire*, 547 U.S. at 686–87; *Gonzalez*, 62 F.4th at 896 ("[A] patient who wishes to challenge a denial may sue only OPM, not Blue Cross."). Bryant thus cannot bring a FEHBA action against BCBSA.

Second, Bryant does not allege he satisfied the regulatory exhaustion requirements before suing. *See* [1]; [10]. So even had he sued OPM, the Court could dismiss his claim. 5 C.F.R. §§ 890.105, 890.107(d)(1); *see also Gonzalez*, 62 F.4th at 896, 900.

Lastly, OPM has prescribed the "only intended remed[y] under FEHBA" for aggrieved federal employees. *Botsford v. Blue Cross & Blue Shield of Mont., Inc.*, 314 F.3d 390, 398 (9th Cir. 2002). That regulation states:

> A covered individual may seek judicial review of OPM's final action on the denial of a *health benefits claim*. A legal action to review final action by OPM involving such denial of health benefits must be brought against OPM and not against the carrier or carrier's subcontractors. The recovery in such a suit shall be limited to a court order directing OPM to require the carrier to pay the *amount of benefits in dispute*.

*Gonzalez*, 62 F.4th at 899 (quoting 5 C.F.R. § 890.107(c)). "OPM's regulations define 'claim' as 'a request for (i) payment of a health-related bill[ ] or (ii) provision of a health-related service or supply.'" *Id.* at 901 (quoting 5 C.F.R. § 890.101). Bryant seeks $40 million in damages. [1] at 4. His "justification . . . is that had BCB[SA] researched its database or . . . double-check[ed] before denying clients, [he] would

11

still have [his] . . . toe." [10] at 6. But he "has not identified any 'payment of a . . . bill' or any 'provision of a . . . service' that is 'in dispute' in this case." *Gonzalez*, 62 F.4th at 901 (quoting 5 C.F.R. §§ 890.101, 890.107(c)). Accordingly, he fails to seek the only remedy available under FEHBA, which is a "court order directing OPM to require the carrier to pay the amount of benefits in dispute." *Id.* (quoting 5 C.F.R. § 890.107(c)).

For these reasons, Bryant fails to state a FEHBA claim.

2.   Federal Medical Malpractice

Bryant alleges a violation of 51 U.S.C. § 20137. [1] at 2; [1-1]; [10] at 8–9. That claim fails.

Section 20137 is "a statutory provision that addresses malpractice and negligence suits brought against the United States for the acts of National Aeronautics and Space Administration (NASA) medical or supporting personnel acting within the scope of their employment." *Blair v. Hattiesburg Clinic*, No. 2:23-CV-126, 2024 WL 1009539, at *1 (S.D. Miss. Jan. 22, 2024) (quotation omitted). Bryant is "employed with the Department of Veterans Affairs." [1] ¶ 1. His complaint does not identify any factual "allegations that would implicate NASA." *Howard v. Adams Farm Living & Rehab.*, No. 1:19-CV-240, 2019 WL 2465264, at *2 n.* (M.D.N.C. Apr. 4, 2019). Because any attempt to sue BCBSA under Section 20137 would be futile, the Court dismisses this claim with prejudice.

3. State Law Claims

The Court dismisses Bryant's state law claims because federal law expressly preempts them.

FEHBA contains a preemption clause:

> The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans.

5 U.S.C. § 8902(m)(1). The Supreme Court has recognized the expansiveness of FEHBA's preemption clause, noting that "state law—whether consistent or inconsistent with federal plan provisions—is displaced on matters of 'coverage or benefits.'" *Empire*, 547 U.S. at 686 (quoting 5 U.S.C. § 8902(m)(1)); *see also Coventry Health Care of Mo., Inc. v. Nevils*, 581 U.S. 87, 96 (2017); *Gonzalez*, 62 F.4th at 903.

FEHBA preempts state law when "(1) the FEHBA contract terms at issue relate to the nature, provision, or extent of coverage or benefits, and (2) the state law relates to health insurance or plans." *Gonzalez*, 62 F.4th at 903 (quoting *Health Care Serv. Corp.*, 814 F.3d at 253). Both elements are met here.

First, Bryant's Complaint centers on BCBSA's failure to update its database and its coverage denial of Regranex. This claim necessarily "relate[s] to the Plan terms that address the 'nature' and 'extent' of coverage." *Id.* at 903 (quoting 5 U.S.C. § 8902(m)(1)). For example, Bryant's claim implicates the Plan's provisions about the coverage of experimental drugs, provisions regarding the types of services and supplies generally covered, provisions about the coverage of prescription drugs in

13

general, and provisions regarding the process for disputing a denial of benefits. *See id.* at 903–04; [8-1] at 359–60, 362, 364–66.

Bryant also takes issue with BCBSA's failure to recommend a substitute treatment. [1] ¶ 7. But BCBSA is solely a carrier of the Plan; it never wears the "hat[]" of a medical provider. *Gonzalez*, 62 F.4th at 905 (distinguishing FEHBA carrier from defendant in *Corp. Health Ins. v. Tex. Dep't of Ins.*, 215 F.3d 526 (5th Cir. 2000), who wore two "hats" of insurer and medical-care provider). And "[t]ort claims arising out of the manner in which a benefit claim is handled are not separable from the terms of the contract that governs benefits." *Id.* at 903 (quotation omitted). The first prong of FEHBA preemption is satisfied.

The second prong is also satisfied. In bringing his negligence claim, Bryant invokes Mississippi common law. Even though that cause of action "do[es] not specifically relate to health insurance, . . . preemption reaches even a state's general laws when their *application* relates to the scope or administration of federal healthcare plans." *Id.* at 904. As discussed, BCBSA's alleged negligent actions "relate to" the Plan's terms. Bryant's common-law claims based on the same actions therefore "relate to" the Plan, too. *Id.* at 904–05. Prong two is satisfied.

Bryant's state law claims are preempted. The Court thus dismisses them with prejudice. *See Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580, 585 n.2 (5th Cir. 2022) ("[D]efensive preemption is an affirmative defense that a defendant can invoke to defeat a plaintiff's state-law claim on the merits by asserting the supremacy of federal law.") (cleaned up).

4. Leave to Amend

Bryant's response includes a request for leave to amend his Complaint and a clarification on his "denial of civil rights" claim. [10] at 1, 8–9; [1] at 2 (alleging a "denial of civil rights under 42 U.S.C. and 28 U.S.C. § 1654").[5] Bryant's response clarifies that he alleges a Section 1983 claim. [10] at 8–9. "When a pro se plaintiff raises a new claim for the first time in response to a motion to dismiss, the district court should construe the new claim as a motion to amend the complaint under [Rule] 15(a)." *Landis v. Martin*, No. 3:19-CV-177, 2020 WL 5270021, at *3 (S.D. Miss. Sept. 4, 2020) (quotation omitted).

The Court denies leave to amend. Section 1983 creates a "species of federal tort liability for individuals to sue state and local officers for deprivations of constitutional rights." *Thompson v. Clark*, 596 U.S. 36, 42 (2022). Federal agencies and officials acting "under color of federal law" are outside the scope of Section 1983, and "the statute [does not] reach purely private conduct." *Doe v. United States*, 831 F.3d 309, 314 (5th Cir. 2016) (citations omitted) (private action must be "fairly attributable to the State for Section 1983 to apply"). BCBSA is not a state or local actor, and the conduct alleged cannot be fairly attributed to the State. Any attempt to add a Section 1983 claim against BCBSA would thus be futile. The Court denies leave to amend. *See Ariyan, Inc. v. Sewerage & Water Bd. of New Orleans*, 29 F. 4th 226, 232 (5th Cir. 2022) (quotation omitted) ("Futility here means that the amended complaint would fail to state a claim upon which relief could be granted.").

---

[5] Section 1654 merely allows a party to appear in court personally or by counsel. *See* 28 U.S.C. § 1654. To the extent Bryant sues under that section, he fails to state a claim.

IV.  Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. The Court GRANTS BCBSA's [8] Motion to Dismiss. To the extent Bryant brings claims founded on FEHBA, the Court dismisses without prejudice.[6] To the extent Bryant brings state-law claims, the Court dismisses with prejudice. The Court dismisses Bryant's Section 20137 claim with prejudice. A separate final judgment shall issue under Federal Rule of Civil Procedure 58.

SO ORDERED, this 7th day of May, 2024.

s/ <i>Kristi H. Johnson</i><br>UNITED STATES DISTRICT JUDGE

---

[6] Bryant must exhaust his administrative remedies before refiling, sue OPM instead of BCBSA, and may only seek the relief provided for under FEHBA and its corresponding regulations. *See supra* Section III.C.1.